WRIGHT & HUBBARD, Appellees, v. THE FIRST NATIONAL BANK OF SIOUX CITY, IOWA, Appellant, AND F. J. STONE, Appellee.

Attorney's Fees: SEPARATE LIABILITY OF DEFENDANTS: EVIDENCE. Plaintiff's claim for attorney fees was admitted by defendants and the issue was between the defendant bank and Stone, its president, as to liability therefor, which was submitted to the court on stipulation.  The principal portion of the claim

in dispute related to negotiations which culminated in a contract that brought about a complete settlement of the affairs of the bank, and which could not be carried out except by its consent, and while Stone chiefly conducted the negotiations, yet the finding of the trial court that the services were rendered for the bank, had sufficient support in the evidence, and the release of Stone from liability was therefore not error.

*Appeal from Woodbury District Court.*—HON. F. R. GAY-NOR, Judge.

SATURDAY, APRIL 11, 1903.

AOTION at law to recover upon a claim for attorney's fees. From a judgment in favor of plaintiffs for the principal part of their demand against the defendant bank, the latter appeals.—*Affirmed.*

*Lewis & Lewis* for appellant.

*Wright, Call & Hubbard* for appellees Wright & Hubbard.

*Taylor & Burgess* for appellee Stone.

WEAVER, J.—Plaintiffs claim upon an account, consisting of numerous items, aggregating $1,105.10 and interest thereon, for services alleged to have been rendered for the defendants. The bank, answering separately, first, denies the claim generally; second, admits its liability to pay certain specified items, amounting to $36; and as to other specified items avers the services therein mentioned were rendered to Stone alone, and not to the bank. By way of counterclaim the bank sets up the promissory note of plaintiffs for $1,000 and interest, upon which it asks judgment. The defendant Stone, answering for himself, denies plaintiffs' petition and each and every allegation therein contained. By agreement of parties the cause was tried to the court without a jury, with stipulation author-

izing the court to find what portion of plaintiffs' claim should be paid by the bank and what by the defendant Stone, and render judgment accordingly. No dispute is made that plaintiffs performed the services charged for, or that such services are of the value alleged; but the real controversy turns upon the question whether certain items of the claim are chargeable to the bank or to Stone. The controversy centers particularly about an item of $500 charged for consultations had and negotiations conducted concerning matters hereinafter mentioned. Some of the smaller items, it is admitted in argument, are properly chargeable to Stone, and not to the bank. The evidence tends to show that in the year 1896 the First National Bank of Sioux City became financially embarrassed and was placed in charge of a receiver. Soon afterwards a reorganization was effected and the bank resumed business. The reorganized bank did not prosper, and efforts were made to secure the aid of some party who would furnish the money necessary to protect the bank's depositors, and thus obtain time in which to realize upon the slow assets and avoid the sacrifice to be apprehended from a forced liquidation. T. J. Stone was president of the bank, and owner of a majority of its capital stock, and naturally was a principal figure in these negotiations. After frequent and protracted consultations the negotiations ended in a contract upon which much of this controversy hinges. The only parties named in the contract and executing same are T. J. Stone and the Farmers' Loan & Trust Company.

By the terms of this agreement, which is much too voluminous to set out in full, Stone assigned all his shares of the bank stock to the company. The agreement also provided in elaborate terms for the settlement of the business of the bank, the preservation of its assets, and the payment of its liabilities. The testimony tends to show that this scheme of relieving the bank from the necessity of again going into the hands of a receiver was entered

into with the consent and approval of the bank's board of directors, and that the plan of settlement thus adopted was carried out. During all these negotiations the plaintiffs' firm of attorneys was consulted by the president and cashier, as well as by other members of the directory, and on one or more occasions one of the plaintiffs attended a meeting of the board, giving advice and help in bringing about the adjustment. The trial court found that, of the plaintiffs' bill, the defendant T. J. Stone should pay certain items, to the amount of $117.57; that of certain other items, amounting to $75, two-thirds were chargeable to Stone and one-third to the bank; and that for the remainder, $955, the bank was alone indebted to plaintiffs. The bank was found entitled to recover upon its counterclaim the aggregate sum of $1,069.93, and for the difference, $137.80, it was given judgment against the plaintiffs. As already indicated, the parties upon this appeal waive all dispute as to plaintiffs' claim, except those more particularly relating to services in the business culminating in the contract signed by Stone and the Farmers' Loan & Trust Company.

It is said by appellant that this contract and the negotiations leading up to it related alone to the private business and personal interests of Stone and the sale of his individual stock. There was evidence, however, from which the trial court could have reached a different conclusion, and upon these matters of fact we are not disposed to interfere with the finding. The contract is much more than an ordinary transfer of shares of stock. Its terms contemplated the complete settlement and adjustment of the bank's affairs. Mr. Stone was not to receive a cent for his stock until the debts of the bank had been paid from its assets, and then was to receive only such fractional proportion of the surplus (if any remain) as the amount of the stock transferred bore to the entire capital. Not only was the stock to be transferred, but the business itself, and

the entire body of the bank's property and assets, of every kind, were to be placed under the direct management and control of the Farmers' Loan & Trust Company; an agreement which could be carried out only by the ratification and consent of the corporation which Stone assumed to represent. From the history leading up to this contract, as well as from the apparent acquiescence in its terms and plan of settlement by the bank and all parties interested therein, we think the court below was justified in finding that plaintiffs' services were rendered for the bank, rather than for Mr. Stone individually; and, having so found, we think there was no error in releasing the latter from liability, and adjudging recovery against the former. The judgment of the district court is AFFIRMED.